UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DEVIN W. J.,                          )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        No. 1:22-cv-00793-JPH-MKK
                                     )
KILOLO KIJAKAZI,                     )
                                     )
                Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Devin J. requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his

application for Social Security Disability Insurance Benefits ("DIB") under Title II

of the Social Security Act. *See* 42 U.S.C. § 423(d). Judge James P. Hanlon has

referred the matter to the undersigned for a report and recommendation pursuant

to 28 U.S.C. § 636(b)(1)(B). (Dkt. 17). For the reasons set forth below, the

undersigned recommends that the Commissioner's decision denying Plaintiff

benefits be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On May 21, 2019, Devin filed an application for Title II DIB, alleging that he

had been disabled since June 2018. (Dkt. 9-7 at 5-10, R. 209-14).[1] Devin's

---

[1] Devin previously applied for DIB in 2016. The application was denied in a final written decision dated June 8, 2018. That denial is not at issue in this case. (Dkt. 9-4 at 40-51, R. 114-25). Because the May 2019 application listed an onset date that pre-dated the June 2018 decision (i.e., June 5, 2018), at the hearing, by agreement, and as reflected by the ALJ's decision, the alleged onset date was amended to June 9, 2018. (Dkt. 9-3 at 7-8, R. 44-45; Dkt. 9-4 at 40-51, R. 114-25).

application alleged disability resulting from problems with a birth defect of pectus excavatum, back pain, left side of body nerve problems, anxiety, depression, and headaches. (Dkt. 9-4 at 2-3, R. 76-77). His application was denied at the initial and reconsideration levels. (*Id.* at 17, 36, R. 91, 110). Administrative Law Judge Gladys Whitfield ("the ALJ") held a hearing on Devin's application in June 2021, where Devin, his counsel, and a vocational expert ("VE") appeared. (Dkt. 9-3 at 2-38, R. 39-75). On July 29, 2021, the ALJ issued her decision, determining that Devin was not disabled. (Dkt. 9-2 at 16-34, R. 15-33). On February 28, 2022, the Appeals Council denied Devin's request for review, making the ALJ's decision final. (*Id.* at 2-4, R. 1-3). Devin now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    STANDARD OF REVIEW

### A.    Regulatory Review

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves his unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 404.1520. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to disability insurance benefits. Because the statutory references for SSI and DIB claims are substantially similar, *see* 20 C.F.R. § 416.920(a), the undersigned will reference them interchangeably throughout this opinion.

medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record, *id.* at 1001, and "may not dismiss a line of evidence contrary to the ruling," *Villano*, 556 F.3d at 563. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of his age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)-(g).

## B.    Judicial Review

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence and free of legal error. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Devin is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A.    Factual Background

Devin was 47 years old as of his alleged onset date of June 9, 2018. (Dkt. 9-2 at 32, R. 31). He has a tenth-grade education. (*Id.*). He has past relevant work history as a landscaper, irrigation supervisor, and lawn mower. (*Id.*).

#### B.    ALJ Decision

In determining whether Devin qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Devin was not disabled. (Dkt. 9-2 at 16-34, R. 15-33).

At Step One, the ALJ found that Devin had not engaged in substantial gainful activity since the alleged onset date of June 9, 2018. (*Id.* at 18, R. 17).

At Step Two, the ALJ found that Devin had the following severe impairments: degenerative disc disease of the back and neck, dysfunction of major

joint(s), neuropathy, pectus excavatum, varicose veins, depressive disorder, and anxiety disorder. (*Id.* at 19, R. 18).

At Step Three, the ALJ found that Devin's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. 9-2 at 20-23, R. 19-22). In evaluating Devin's physical impairments, the ALJ considered Listing 1.15 (disorders of the skeletal spine), Listing 1.16 (spinal and nerve root disorder), Listing 1.18 (abnormality of major joint(s) in any extremity), Listing 4.11 (chronic venous insufficiency), and Listing 11.14 (peripheral neuropathy). (*Id.* at 20-21, R. 19-20). In assessing Devin's mental impairments, the ALJ considered Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 21-22, R. 20-21). As to the "paragraph B" criteria, the ALJ concluded that Devin had moderate limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 22-23, R. 21-22). The ALJ also found the "paragraph C" criteria not satisfied. (*Id.* at 23, R. 22).

After Step Three but before Step Four, the ALJ found that Devin had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> he can never climb ladders, ropes or scaffolds; and occasionally climb
> ramps or stairs, balance, stoop, kneel, crouch, and crawl. The
> claimant's work should be limited to unskilled work that can be
> learned in 30 days or less, where the claimant would work
> independently with end-of-the-day production goals or standards. No
> complex written or verbal communications. No complex decision

making. The claimant's work should be limited to simple, routine, repetitive tasks, that is short-cycle work where the same routine tasks are performed over and over according to set procedures, sequence, or pace. No teamwork. No fast paced work. Occasional superficial interactions with coworkers, supervisors, and the general public.  No more than occasional routine work place changes. He can tolerate normal supervisory interactions including, for example, performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work.

(Dkt. 9-2 at 24, R. 23).

At Step Four, the ALJ concluded that Devin would not be able to perform his past relevant work. (*Id.* at 32, R. 31).

At Step Five, relying on the vocational expert's testimony and considering Devin's age, education, work experience, and RFC, the ALJ concluded that Devin could perform jobs that exist in significant numbers in the national economy. (*Id.* at 33-34, R. 32-33). The ALJ ultimately concluded that Devin was not disabled since his onset date of June 9, 2018, through the date of her decision, July 29, 2021. (*Id.* at 34, R. 33).

## IV.  ANALYSIS

Devin presents two reasons that the ALJ's decision should be remanded. First, he argues that the ALJ's subjective symptom analysis was flawed in that the ALJ "provided inadequate reasoning to discredit Devin's statements regarding his pain and limitations" and "ignored Devin's complex regional pain syndrome and the implications of pain on his ability to function under SSR [Social Security Ruling] 03-

2p." (Dkt. 11 at 4; *see also id.* at 13-22).[3] Second, Devin attacks the ALJ's RFC assessment, claiming the ALJ failed to adequately explain the lack of physical limitations for his upper and lower extremities. (*Id.* at 4; *see also id.* at 22-28). The Court addresses each argument in turn.

### A.    Subjective Symptom Analysis

Devin contends that the ALJ's subjective symptom analysis failed to comply with SSR 16-3p and SSR 03-2p. (*Id.* at 13-22; Dkt. 13 at 1-4). He presents a variety of critiques, but his primary argument is that the ALJ failed to properly account for and address his pain. (*Id.*). In response, the Commissioner maintains that the ALJ sufficiently articulated and supported her subjective symptom assessment, having considered Devin's subjective statements, activities of daily living, course of treatment, objective evidence, and the medical source opinions. (Dkt. 12 at 8-21).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[4] First, the ALJ must determine whether the claimant has a medically determinable

---

[3] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the docket. The undersigned has chosen to cite to the paginated numbers from the docket.

[4] SSR 16-3p became effective on March 28, 2016, 2017 WL 5180304, at *13 (S.S.A. Oct. 25, 2017), replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4.

When evaluating a claimant's subjective statements about the intensity and persistence of his symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms. *Cole*, 831 F.3d at 412. An ALJ does not have to believe an applicant for benefits, of course, *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996), but if she doesn't, she has to explain why and support her explanation with specific reasons "supported by the record," *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). Only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong,'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008), and "disturb the ALJ's credibility finding," *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

At step two of the Rule 16-3p analysis, the regulation requires the ALJ to consider the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3).

When assessing a claimant's subjective symptoms, the agency's rule directs the ALJs to "consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8. "To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." *Id.*

When reviewing the agency decision, "[r]ather than nitpick the ALJ's opinion for inconsistence or contradictions," the Seventh Circuit has instructed to "give it a commonsensical reading." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). And "[w]hen assessing an ALJ's credibility determination," the Court "do[es] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [it] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413.

With these principles in mind, the Court now turns to the ALJ's subjective symptom analysis in this case. Devin argues that the ALJ provided "inadequate reasoning to discredit [his] statements regarding his pain and limitations" and "ignored [his] complex regional pain syndrome and the implications of pain on his ability to function under SSR 03-2p." (Dkt. 11 at 4). He also argues that the ALJ improperly discounted his activities of daily living and cursorily attacks the ALJ's assessment of his mental health conditions. (*Id.* at 14-17, 20).

As set forth below, the Court does not find these arguments persuasive. The ALJ adequately considered each of the SSR 16-3p factors in her opinion and did not run afoul of SSR 03-2p. She spent significant time discussing the objective medical

11

evidence and adequately addressed Devin's allegations of pain, treatment history, functional limitations, and activities of daily living. Although not perfect, the opinion satisfies the standard of review applicable here.

### 1.    Activities of Daily Living

The Court will first address Plaintiff's argument that the ALJ failed to explain how Devin's "extremely minimal activities of daily living translates to the level of functioning she deems him capable of in [the] RFC." (Dkt. 11 at 14; *see also id.* at 14-16). The ALJ found Devin's subjective symptom allegations "not entirely consistent with the medical evidence and other evidence in the record." (Dkt. 9-2 at 25, R. 24). And in doing so, it is true that the ALJ referenced several of Devin's activities of daily living, including his ability to care for pets, prepare simple meals for a portion of the period at issue, drive for a portion of the period at issue, handle money/finances, and watch television. (*Id.*). The undersigned acknowledges the caselaw that counsels against equating such activities with full-time employment. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) ("[T]he 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'") (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In this case, however, the ALJ refrained from drawing such an equivalency but rather considered Devin's subjective allegations alongside the rest of the record, as discussed herein. *See* SSR 16-3p, 2017 WL 5180304, at *5 ("We must consider whether an individual's statements about the

intensity, persistence, and limiting effects of his or her symptoms are consistent

with the medical signs and laboratory findings of record.").

Nothing in the opinion indicates that the ALJ gave short shrift to, much less

ignored, Devin's testimony regarding his limited activities of daily living. As a

starting point, the ALJ provided a detailed summary of Plaintiff's testimony

regarding his limitations:

> the claimant stated that he experienced various bodily pains,
> especially with regard to his ribs, back, neck, and extremities,
> particularly the left side. He indicated that he had nerve problems at
> the left side of his body. He reported that he had a congenital defect
> of pectus excavatum, a condition in which the breastbone sinks into
> the chest. He mentioned that he had shortness of breath due in part
> to this condition. He stated that he had a hard time getting around,
> and often needed to rest, so he relied on his girlfriend for various
> aspects of his activities of daily living. He asserted that his physical
> issues interfered with his sleep and his ability to perform some of his
> personal care tasks. He stated that he generally did not leave his
> home, due in part to his pain, and a fear of passing out from lack of
> oxygen. He indicated that he had difficulties performing just about
> every physical action. He estimated that he could walk about 10-15
> minutes before needing to stop and rest. He stated that he could lift
> no more than 10 pounds. He testified that he had varicose veins,
> which affected his left lower extremity, and that he needed to elevate
> his leg. (See e.g. Exhibit(s) B2E, B6E, B10E; Hearing Testimony).

(Dkt. 9-2 at 24-25, R. 23-24; *see also id.* at 25, R. 24 (reciting testimony regarding

mental impairments)). Devin does not claim that the ALJ's summary omitted any

notable aspect of his complaints. Rather, he argues that she neglected to explain

what he alleges is a disconnect between his subjective complaints and the ALJ's

conclusion that he is capable of full employment.

It is important to note that the ALJ is not required to believe the claimant; she must only explain her rationale, which she did to a satisfactory degree here. While the ALJ did not find Devin's activities of daily living to "*fully* support [his] subjective complaints," (Dkt. 9-2 at 25, R. 24 (emphasis added)), nothing in the opinion suggests that she misunderstood or misconstrued the limits on his abilities or discarded them out of hand. For example, the ALJ did not minimize the qualifications that Devin placed on his ability to perform his activities of daily living, such as his need for assistance from his girlfriend to complete certain activities. (*See id.* at 24, R. 23 ("He stated that he had a hard time getting around, and often needed to rest, so he relied on his girlfriend for various aspects of his activities of daily living."); *id.* at 25, R. 24 (Devin relied on his girlfriend "to assist him with aspects of his activities of daily living")).

Even more significantly, nothing indicates that the ALJ used Devin's activities of daily living as the only, or even primary, consideration when deciding to not fully credit his complaints. Rather, she merely concluded that Devin's testimony was not *wholly* supported by his activities of daily living. For example, the ALJ noted that Devin "reported that he was able to drive, at least for a portion of the period at issue," (*id.* at 25, R. 24), and found that such a report was not *fully* consistent with Devin's testimony regarding having a sedentary lifestyle, (s*ee* Dkt. 9-3 at 18 *et seq.*, R. 55 *et seq.*), and having "difficulties performing just about every physical action," (Dkt. 9-2 at 25, R. 24).

Similarly, the ALJ explained that Devin's abilities to conduct some household tasks and watch television indicated he could complete tasks requiring "*some* degree of concentration." (*Id.* (emphasis added)). Contrary to Devin's argument, the ALJ did not equate this "to the level of sustained concentration required for competitive employment," (Dkt. 11 at 16). In fact, the opposite appears to be true: the ALJ found a moderate limitation in Devin's ability to concentrate, persist and maintain pace," (Dkt. 9-2 at 22, R. 21), and included several concentration-related limitations in the RFC, (*see, e.g.*, *id.* at 24, R. 23 ("No complex decision making. … limited to simple, routine, repetitive tasks"); *id.* at 31, R. 30 ("These limitations are necessary to reduce the claimant's exposure to workplace stress, and to accommodate his reported fatigue and concentration difficulties.")).

In sum, while the Court may find some reasons to pause before fully endorsing the ALJ's analysis of Devin's activities of daily living, the standard here is not perfection. As discussed further below, the ALJ cited numerous reasons, including objective medical evidence, for discounting Devin's subjective complaints. *See Halsell v.* Astrue, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are, . . . and here the ALJ cited other sound reasons for disbelieving" the claimant). Moreover, the ALJ acknowledged and accepted some, if not all, of Devin's subjective complaints and included additional RFC limitations to address the symptoms as alleged. *See infra*. For all of these reasons, the undersigned does not recommend remand on the basis of an erroneous or flawed treatment of Devin's activities of daily living.

2.    **CRPS & Pain**

The Court now turns to the main thrust of Devin's subjective-symptom argument: that the ALJ inadequately considered his CRPS and the pain and limitations resulting therefrom, thereby violating SSR 16-3p and SSR 03-2p.[5] (Dkt. 11 at 18-21).

The Court pauses here to note that despite some indications to the contrary, (*see* Dkt. 11 at 19), Devin is "not contend[ing] that the ALJ should have listed CPRS as a severe impairment [at step two], considered it at step three with equivalence evaluation, and accounted for additional limits," (Dkt. 13 at 2). Rather, Devin's critique lies with the ALJ's consideration (or lack thereof) of CRPS in connection with the subjective-symptom (and RFC) analyses. (*Id.*).

While it is true that the ALJ made only one explicit reference to CRPS, (Dkt. 9-2 at 27, R. 26 ("left lower extremity neuropathic pain was thought to likely be complex regional pain syndrome")), reading the ALJ's analysis in its entirety shows that she sufficiently addressed Devin's pain and symptoms, whether those were attributable to CPRS or some other condition,[6] provided sufficient reason for

---

[5] SSR 03-2p is entitled "Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome / Complex Regional Pain Syndrome" and addresses diagnostic and evaluation criteria. 2003 WL 22814447 (S.S.A. Oct. 20, 2003). The Ruling gives guidance regarding how to evaluate an individual's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms [which] are not substantiated by objective medical evidence." *Id.* at *6. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* at *7 (citing SSR 96-7p and SSR 96-8p).

[6] The record does not indicate a definitive diagnosis of CRPS. (*See* Dkt. 9-2 at 27, R. 26 ("During an examination on July 6, 2020, the claimant' left lower extremity neuropathic pain was thought to likely be complex regional pain syndrome.")). The Court reiterates that Devin is not arguing that CRPS is a severe impairment. *See infra.*

discounting Devin's subjective complaints, and did not violate SSR 16-3p or SSR 03-2p.

Devin's complaints of pain were very much a part of the ALJ's review. The ALJ referenced them throughout her opinion, evidencing that she gave due consideration to, and did not sidestep, such reports when arriving at her ultimate decision. For example, the ALJ noted Devin's continued treatment for "various bodily pains," including pain related to his left lower extremity, "ribs, chest, neck, back, and left upper extremity." (Dkt. 9-2 at 24, R. 23). She also referenced that he "generally did not leave his home, due in part to his pain," (*id.* at 25, R. 24), and specifically noted Devin's reports of "numbness and tingling sensations in his hand," (*id.* at 26, R. 25). She remarked that Devin "attributed these pains and abnormal sensations to his pectus excavatum, at least in part, as well as to spinal disorders, and a left shoulder defect," (*id.* at 26, R. 25). The ALJ further noted that Devin's "most significant bodily pain appears to be related to his left lower extremity." (Dkt. 9-2 at 25, R. 24). She also considered statements of Devin's sister. (*Id.* at 31, R. 30). The ALJ's review covered an extended period of time, (*see, e.g.*, *id.* at 27, R. 26 ("after a varicose vein procedure in the left leg in 2018, the claimant began complaining of ongoing numbness sensations related to the left lower extremity")), indicating she adhered to SSR 03-2p's guidance that the assessment be informed by "the individual's capacities over a period of time" and a "longitudinal picture of the individual's status". SSR 03-2p, 2003 WL 22814447, at *7.

The ALJ assessed subjective complaints of pain along with the objective medical evidence. SSR 16-3p instructs ALJs that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" 2017 WL 51800304, at *5; *see also* SSR 03-2p, 2003 WL 22814447, at *6 (discussing the relevance of medical sources to RSD/CRPS analysis). Here, the ALJ noted that despite his reports of pain, Devin "was not demonstrated to be substantially limited in objective physical functioning during examinations within the period at issue." (Dkt. 9-2 at 26, R. 25). His physical exams "generally revealed a normal gait, despite the claimant's subjective reports of cane usage." (*Id.* at 26, R. 25). While recognizing that some exam findings "showed tenderness, and reduced range of motion, particularly in the left upper extremity," Devin "normally had full strength." (*Id.*). May and November 2019 exams showed Devin could raise both of his legs normally and "ambulate with his reported pain." (*Id.*).

The ALJ also reviewed diagnostic testing. The ALJ acknowledged Devin suffered from some musculoskeletal abnormalities, including those associated with pectus excavatum. (*Id.*). But she also noted other tests that showed normal or relatively less concerning results. (*See id.*). Contrary to Devin's assertion, the ALJ did not place undue reliance on the readings from the February 2019 MRIs and NCS/EMG, (*id.*), but rather viewed those records alongside the CT scans, x-rays, and other objective medical evidence. (*Id.* at 26-28, R. 25-27). When viewed as a whole, this analysis shows that the ALJ appropriately considered the medical

evidence as "a useful indicator" to guide, but not dictate, her subjective-symptom analysis.

The ALJ also provided a sufficiently thorough review of the evidence pertaining to Devin's history of varicose veins and pain in his left leg. This history included a recitation of the testing performed, his subjective complaints to providers, medications, and physical examinations. (*Id.*). And her discussion builds a sufficient bridge between the evidence and her conclusions. For example, at a March 2021 post-surgery examination, Devin "complained of worse pain in his left foot." (*Id.* at 28, R. 27). During the examination, however, Devin was not in distress (although he was using crutches), "exhibited a normal musculoskeletal range of motion, and had no edema. (*Id.*). "He had normal muscle tone." (*Id.*). These relatively normal physical findings support the ALJ's finding that Devin's subjective complaints were "not *entirely* consistent" with the other evidence in the record. (*See also id.* at 28, R. 27 ("An examination by a neurologist on April 13, 2021, did not reveal any extraordinary objective deficits in physical functioning.")).

The ALJ also considered the opinions of Dr. Sands and Dr. Smartt, the agency medical consultants, which she found persuasive. (*Id.* at 27, R. 28). Notably, they did not include any limitations in excess of those included in the ALJ's RFC. *See infra.*

As a final note, Devin also appears to critique the ALJ's assessment of his mental health history in the subjective-symptom section of his brief. (Dkt. 11 at 17-18, 20). He cites general propositions of law relating to the assessment of mental

impairments, (*id.*), but fails to tie those propositions to a specific aspect of the ALJ's decision that he alleges is lacking. A complete reading of the ALJ's opinion shows she gave thorough treatment to his mental health limitations, including those associated with pain. (*See* Dkt. 9-2 at 22-23, 25, 28-31, R. 21-22, 24, 27-30). Moreover, Devin does not challenge any of the mental-health limitations of the RFC. *See infra*, n.7.

In sum, the ALJ provided evidentiary support for her evaluation of Devin's subjective symptoms, gave adequate consideration to his (potential) CRPS and associated pain, and created a logical bridge between the evidence and her conclusion. Accordingly, the undersigned does not recommend that the Court find the ALJ's analysis of Devin's subjective symptoms to be patently wrong and does not recommend remand on this issue.

## B.    RFC Assessment

Devin next argues that the ALJ's RFC lacks evidentiary support and fails to address all of his limitations.[7] More specifically, he argues that the ALJ found "dysfunction of major joint(s)" to be a severe impairment but did not explain what that meant, (Dkt. 11 at 23), and failed to provide "*any* limitation on upper and lower extremity use," (*id.* at 22 (emphasis added)). (*See also id.* at 22-29). Devin asserts that the ALJ glossed over his left shoulder complaints. (*Id.* at 26). And, while he

---

[7] Devin does not challenge the mental-health related limitations in the RFC. To the extent his brief suggests any sort of failing, the argument is undeveloped and therefore waived. Moreover, Devin does not explain what further limitations should have been included in the RFC to accommodate any mental-health conditions. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations ... because he hypothesizes none.").

acknowledges that his left leg was the subject of more extensive discussion, he objects to the ALJ's conclusion that "other than the invasive surgical procedure his treatment was conservative." (*Id.*). She improperly "condemn[ed] him for pursuing only conservative treatment options," and only offered summaries and assertions, "without constructing a bridge from one to the other," he asserts. (*Id.*).

In response, the Commissioner asserts that the ALJ thoroughly reviewed Devin's subjective complaints, objective medical evidence, treatment history, and clinical history, and appropriately analyzed the state agency opinions of Drs. Sands, Smartt, Clark, and Larsen, and that this evidence constitutes substantial evidence supporting the RFC determination. (Dkt. 12 at 16-19).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from h[is] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga* for same proposition); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not

individually rise to the level of a severe impairment."); 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).

Under SSR 96-8p, ALJs are required to explain how they arrived at their conclusions regarding a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding where ALJ failed to set forth a supported record basis for his functional capacity finding and provide a bridge from the record evidence to his conclusions).

Before delving further into the RFC, the Court first addresses Devin's complaint that the ALJ failed to explain what she meant by the "dysfunction of major joint" impairment. (Dkt. 11 at 23). Devin asserts one can only presume that the ALJ was referencing the left shoulder. That may be true, but only if one adopts a strained and unreasonable reading of the ALJ's decision. But the Seventh Circuit directs this Court to give the ALJ's decision a commonsense reading. *See supra*. Doing just that and reviewing the ALJ's opinion as a whole, the undersigned understands the phrase "dysfunction of major joint" to clearly reference the upper extremity. (*See* Dkt. 9-2 at 21 ("the claimant does not have the inability to use at least one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements"); *id.* ("claimant's impairments do not preclude the use of both upper extremities to complete work-

related activities...")). And given the absence of any significant evidence, discussion, or argument regarding Devin's *right* shoulder or arm in the record, it is also reasonable to conclude the ALJ's concern focused on Devin's left upper extremity.

So, the Court now turns to the RFC determination at issue. As previously noted, the ALJ concluded that Devin had the RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b), with the following exceptions:

> he can *never climb ladders, ropes or scaffolds*; and *occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl*. The claimant's work should be limited to unskilled work that can be learned in 30 days or less, where the claimant would work independently with end-of-the-day production goals or standards. No complex written or verbal communications. No complex decision making. The claimant's work should be limited to simple, routine, repetitive tasks, that is short-cycle work where the same routine tasks are performed over and over according to set procedures, sequence, or pace. No tandem tasks. No teamwork. No fast paced work. Occasional superficial interactions with coworkers, supervisors, and the general public. No more than occasional routine work place changes. He can tolerate normal supervisory interactions including, for example, performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work.

(Dkt. 9-2 at 24, R. 23 (emphasis added); *see also* 20 C.F.R. § 404.1567(b) (defining light work).

As an initial matter, Devin's arguments mischaracterize the RFC's limitations. Devin first claims that the ALJ failed to explain "the lack of *any* limitations on upper and lower extremity use." (Dkt. 11 at 22 (emphasis added)). He

later softens that position somewhat, asserting that "[o]ther than the weight limitation associated with light work, the ALJ imposed no limitations on the use of his upper extremities." (*Id.* at 23). As the Commissioner points out, however, that is not accurate. The RFC includes several limitations relating to the use of extremities. It completely prohibits climbing ladders, ropes, and scaffolds, and limits Devin to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (Dkt. 9-2 at 24, R. 23). Of perhaps useful note to a reader unfamiliar with disability reviews, the term "occasionally" in this context means "occurring very little to no more than one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

With the RFC landscape thus more clearly defined, the Court now turns to whether the ALJ adequately explained the rationale behind the limitations that she imposed. A comprehensive reading of the opinion indicates that she did.

As to Devin's critique that the ALJ failed to "explain the rationale behind her findings of the RFC, and particularly" her conclusions regarding his extremity limitations, the Seventh Circuit has found that ALJs are not required to make specific findings as to each functional limitation. *See Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009) ("Zatz's interpretation of SSR 96-8p would require an ALJ to provide a narrative discussion assessing the applicant's capacity to perform every single work-related function, including sitting, standing, walking, lifting, carrying . . . . Although the ALJ could have been more explicit in his findings, his duty under SSR 96-8p is not as onerous as Zatz suggests."); *see also Knox v. Astrue*, 327 F.

App'x 652, 657 (7th Cir. 2009) ("Although the RFC assessment is a function-by-function assessment, SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient.") (internal quotations omitted).

Here, the ALJ sufficiently explained her rationale behind the RFC's limitations regarding extremity use. She found that a limit to "light exertional work reasonably accommodates [Devin's] reported bodily pains due to his spine disorders, degenerative disc disease of the back and neck, dysfunction of major joint(s), neuropathy, pectus excavatum, and varicose veins." (Dkt. 9-2 at 29, R. 28). She further found that the "postural limitations . . . offer adequate safety precautions, as well as protections against exacerbating [Devin's] symptoms. (*Id.*). She explained that "[g]reater physical limitations [we]re not warranted" because, in part, the medical records revealed no "substantial objective abnormalities in physical functioning during his examinations, though he had some deficits." (*Id.*).

Devin devotes nearly two pages to discussion of treatment sought for "left shoulder pain with numbness and tingling into his hand." (Dkt. 11 at 24; *id.* at 24-25). But the examinations and/or treatments he cites are all from the eight-day span of July 11 to July 19, 2019. (*Id.*). A review of the record indicates a possible explanation for that narrow focus: with the exception of his hearing testimony, Devin's complaints regarding shoulder pain appear to have diminished after July 2019. (*See, e.g.*, Dkt. 9-13 at 34, R. 473 (Aug. 7, 2019, physical therapy visit which indicated continued shoulder pain but noted progress towards goal of increased left

grip strength); Dkt. 9-17 at 4, R. 606 (Nov. 14, 2019, emergency visit at which Devin reported back and leg (but not shoulder) pain); Dkt. 9-18 at 8, R. 623 (June 18, 2020, office visit where Devin's musculoskeletal complaints were limited to "back pain and myalgias (left leg)")). Even Devin's hearing testimony regarding pain focused almost exclusively on his legs, back, and chest. (Dkt. 9-3 at 17-22, 25, R. 54-59, 62).

As to his lower extremity, Devin acknowledges that the ALJ "included more evidence regarding the left lower extremity." (Dkt. 11 at 26). But he critiques the ALJ's finding that "other than the invasive surgical procedure his treatment was conservative in nature." (*Id.*; *see also id.* ("The ALJ failed to identify what aggressive treatments would have been appropriate.")).

Devin's attack on the RFC asks the Court to take too strained of a reading of the ALJ's opinion. Nothing in the ALJ's opinion indicates that any failure to pursue other treatments was the deciding factor in her conclusion that no additional limitations were warranted. Rather, the ALJ's RFC conclusion was driven by a review of the medical evidence and agency opinions.

The ALJ considered the evidence related to Devin's limitations in detail throughout the decision. *See Antonakis v. Colvin*, No. 14-C-1021, 2016 WL 1175128, at *4 (E.D. Wis. Mar. 25, 2016) ("The ALJ's decision must be read as a whole; an ALJ need not repeat his discussion of medical evidence in each section of the decision where it may be relevant") (citing *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). She carefully reviewed Devin's history of lower leg symptoms and

treatment (including the fact that his reports of pain and numbness continued after his surgery). Recognizing its significance, she stated she would discuss it "separately . . . in detail." (Dkt. 9-2 at 25, R. 24). She then proceeded to do just that. Alongside Devin's subjective complaints, the ALJ considered that he had normal straight leg raise testing in May 2019 and that "[w]hile straight leg testing was positive bilaterally during an examination in November 2019, there was no weakness, and the claimant was able to ambulate with his reported pain." (*Id.* at 26, R. 25). Devin had no history or indication of deep vein thrombosis. The ALJ reviewed the 2020 medical records which showed a normal EMG testing of his left leg, normal left foot/ankle x-rays, and only the possibility of "greater saphenous vein reflux" in his left leg. (*Id.*).

The ALJ specifically addressed Devin's potential CRPS diagnosis, acknowledging his provider referred Devin to pain management and disagreed with the vascular surgery that Devin nevertheless chose to have. (*Id.* at 27, R. 26). In March 2021, Devin complained of "worse pain in his left foot since the [2021] surgery" and continuing edema, but his examination showed him to be in "no distress" and did not show edema. (*Id.* at 28, R. 27). He said gabapentin did not help and "was offered Lyrica." (*Id.*). He had normal musculoskeletal range of motion and normal muscle tone. (*Id.*). The April 2021 examination showed similar findings. Although Devin continued to complain of pain and numbness, he had "normal posture," "largely normal" strength," "no atrophy," normal reflexes and coordination and a normal stride. (*Id.*).

In addition to the medical records, the ALJ considered the opinions of Dr. Sands and Dr. Smartt, stage agency medical consultants, finding them both to be supported by the medical record, "consistent with the record as a whole," and therefore persuasive. (*Id.* at 29, *R.* 28). Dr. Sands' October 2019 opinion limited Devin to light exertional work with occasional postural limitations and no climbing. (*Id.*). Dr. Smartt affirmed that opinion in September 2020. (*Id.*). Devin makes no argument that these opinions did not consider the relevant evidence or improperly interpreted it. In fact, Devin sidesteps these opinions entirely. (*See generally* Dkt. 11, Dkt. 13). The ALJ did not err in relying on these opinions. *See* 20 C.F.R. § 404.1513a(b)(1) (requiring ALJs to consider medical findings and evidence by such consultants "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").[8]

Devin further argues that the ALJ should have explained her decision not to include the additional extremity limitations that were included in her third hypothetical to the VE. (Dkt. 11 at 27). The hypotheticals posed by the ALJ are indeed significant to the present analysis, but perhaps not for the reasons Devin hopes. The ALJ posed four hypotheticals to the VE:

1. Light work; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; additional mental limitations. (Dkt. 9-3 at 31, R. 68).

---

[8] Devin does not point to any treating physician's opinion that supported greater restrictions than those imposed in the RFC. He is not required to do so, but this fact distinguishes this case from those where an ALJ gives a treating provider's opinion short shrift.

2.  Sedentary work; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; additional mental limitations. (*Id.* at 32, R. 69).

3.  Light work; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; frequent reaching forward, side, and overhead; frequent handling, fingering, and feeling; no foot-control operation; no driving or operation of a motorized vehicle; additional mental limitations. (*Id.* at 33, R. 70).

4.  Sedentary work; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; frequent reaching forward, side, and overhead; frequent handling, fingering, and feeling; no foot-control operation; no driving or operation of a motorized vehicle; additional mental limitations. (*Id.* at 34, R. 71).

To *each* of these hypotheticals, the VE responded that jobs would be available: #1 – marker, garment sorter, classifier, (*id.* at 31-32, R. 68-69); #2 – document preparer, ink printer, hand mounter, (*id.* at 32, R. 69); #3 – marker, garment sorter, and classifier, (*id.* at 33-34, R. 70-71); #4 – document preparer, ink printer, and hand mounter, (*id.* at 34, R. 71). Devin does not challenge these opinions.

With this record in mind, the undersigned can conclude that the ALJ considered the greater limitations desired by Devin but found them unnecessary based on the evidence she detailed throughout her opinion. The ALJ expressly concluded that the postural limitations she did impose "offer adequate safety precautions, as well as protections against exacerbating the claimant's symptoms" and that "[g]reater physical limitations [we]re not warranted." (Dkt. 9-2 at 29, R. 28). She then reiterated her analysis of the medical records, examinations, diagnostic testing, and "objective evidence in general." (*Id.*). Moreover, as noted above, even had the ALJ imposed the additional restrictions included in her

hypotheticals to the VE, jobs would still remain available, calling into question the usefulness of a remand, even if one were warranted here.

Devin's counsel posed a hypothetical regarding the impact of an individual's need "to elevate their legs during work hours." (Dkt. 9-3 at 37, R. 74). The VE responded that the use of anything more than a standard height footstool (16 inches in height) would be work-preclusive. (*Id.*). In her opinion, the ALJ explicitly addressed this issue by discussing edema. She referenced Devin's reports of edema and the findings with respect to edema throughout her opinion, *see supra*, but ultimately concluded that "when present," it "was not objectively severe enough to justify a need to elevate the lower extremities for any significant period." (Dkt. 9-2 at 29-30, R. 28-29 (citing exhibits)).

While it may have been better for the ALJ to make more explicit some of her findings related to Devin's ability to use his extremities, upon review of the record and the ALJ's opinion, it is clear that she implicitly found that Devin was not limited except as expressed in the RFC. *See, e.g.*, *Borland v. Colvin*, No. 13-C-738, 2014 WL 4715884, at *6-7 (E.D. Wisc. Sept. 22, 2014). And again, the Court reviews the ALJ's opinion for sufficiency, not excellence.

## IV.   CONCLUSION

For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Devin's benefits be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to

file objections within fourteen days after service will constitute a waiver of

subsequent review absent a showing of good cause for such failure.

So RECOMMENDED.

Date: 8/24/2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email