UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEVIN W. J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00793-JPH-MKK |
| | ) |
| MARTIN O'MALLEY, Acting Commissioner | ) |
| of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTION AND ADOPTING THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the Social Security Administration's

decision denying him disability benefits.  Magistrate Judge M. Kendra Klump

entered a Report and Recommendation recommending that the Court affirm

that decision.  Dkt. 19.  Plaintiff objects to the recommendation.  Dkt. 20.  For

the reasons stated below, the Court **OVERRULES** Plaintiffs' objections, dkt.

[20], and **ADOPTS** the Report and Recommendation, dkt. [19].  The

Commissioner's decision is **AFFIRMED**.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management
Committee of the Administrative Office of the United States Courts, the Southern
District of Indiana has opted to use only the first name and last initial of non-
governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley automatically became the Defendant in this case.  Fed. R. Civ. P.
25(d). He was sworn in as Commissioner on December 20, 2023.

# I.
# Facts and Background

Plaintiff applied for disability insurance benefits in May 2019, alleging

that he had been disabled since June 2018.  Dkt. 9-2 at 16.  Plaintiff's

application was initially denied on December 4, 2019, and denied upon

reconsideration on October 1, 2020.  *Id.*  The Administrative Law Judge (ALJ)

held a telephonic hearing on June 24, 2021, and denied Plaintiff's claims on

July 29, 2021.  *Id.* at 16–34.  After the appeals council denied review, Plaintiff

brought this action asking the Court to review the denial of benefits under 42

U.S.C. § 405(g).  Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation in 20

C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled.  Dkt. 9-2

at 16–34.  Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity since the application date.  *Id.* at 18.

- At Step Two, he had "the following severe impairments: degenerative disc disease of the back and neck, dysfunction of major joint(s), neuropathy, pectus excavatum, varicose veins, depressive disorder, and anxiety disorder."  *Id.* at 19.

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.* at 20.

- After Step Three but before Step Four, he had the residual functional capacity (RFC) to perform "light work . . . except he can never climb ladders, ropes or scaffolds; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant's work should be limited to unskilled work that can be learned in 30 days or less, where the claimant would work independently with end-of-the-day production goals or standards. No complex written or verbal communications. No complex decision making. The claimant's work should be limited to

2

simple, routine, repetitive tasks, that is short-cycle work where the same routine tasks are performed over and over according to set procedures, sequence, or pace. No tandem tasks. No teamwork. No fast paced work. Occasional superficial interactions with coworkers, supervisors, and the general public. No more than occasional routine work place changes. He can tolerate normal supervisory interactions including, for example, performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work." *Id.* at 24.

- At Step Four, Plaintiff "is unable to perform any past relevant work." *Id.* at 32.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" including marker, garment sorter, classifier, document preparer, ink printer, or hand mounter. *Id.* at 33.

Plaintiff sought judicial review, arguing that the ALJ erred by erring in her analysis of Plaintiff's subjective symptoms and failed to provide a sufficiently thorough explanation of her RFC limitations. Dkt. 11. Magistrate Judge Klump issued a Report and Recommendation recommending that the ALJ's decision should be affirmed. Dkt. 19. Plaintiff has objected. Dkt. 20.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).  After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 404.1520(e), (g).

The district court will affirm the benefit denial if the ALJ committed no legal error and substantial evidence supports the ALJ's decision.  *Stephens*, 888 F.3d at 327.  Additionally, courts "will not remand a case to the ALJ for

4

further specification where we are convinced that the ALJ will reach the same result." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021).

"The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations." *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)).  If a party objects to the recommendation, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C).

### III.
### Analysis

Plaintiff argued that the ALJ erred in her analysis of Plaintiff's subjective symptoms and the Plaintiff's RFC.  Dkt. 11.  Magistrate Judge Klump recommends rejecting Plaintiff's arguments and affirming the ALJ's denial of benefits.  Dkt. 19.  Plaintiff objects to that recommendation.  Dkt. 20.

## A. Subjective Symptoms

### 1. Evaluation of Subjective Symptoms

The ALJ discounted the Plaintiff's statements regarding "the intensity, persistence, and limiting effects of [his] symptoms" given Plaintiff's medical record, daily activities, and his failure to follow-up with his behavior health referrals.  Dkt. 9-2 at 25.  Magistrate Judge Klump recommended affirming the ALJ's determination since the ALJ provided valid reasons based on "objective medical evidence" for discounting Plaintiff's complaints.  *Id.* at 14–15.

To evaluate a plaintiff's subjective symptoms, the ALJ must first "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms," and then "evaluate the intensity and persistence of [those] symptoms."  Social Security Ruling 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017).  In that second step, ALJs "will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and [ALJs] will evaluate whether the statements are consistent with objective medical evidence and the other evidence."  *Id.*  Even if some of the ALJ's reasons for discounting a plaintiff's subjective testimony are invalid, so long as the determination was not "patently wrong", the decision will not be remanded. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[T]he ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record."); *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

Here, the ALJ's reasons for discounting Plaintiff's subjective complaints were sufficient.  Dkt. 19 at 15.  Like in *Halsell*, the ALJ's discussion of the medical record constitutes a "sound reason" for discounting Plaintiff's complaints.  357 F. App'x at 722–23.  For example, the ALJ explained that "the claimant's physical examinations generally revealed a normal gait, despite the claimant's subjective reports of cane usage" and "no findings of any significant atrophy to suggest nonuse of a muscle."  Dkt. 9-2 at 26 (citing examination records from a period of months in 2019).  During these examinations that

6

ranged from between January 2019 to at least April 2021, Plaintiff showed no

atrophy in his lower extremity and no changes in tone. *Id.* at 26–27. The ALJ

also relied on diagnostic testing on numerous occasions that "did not reveal

any substantial musculoskeletal or neurological abnormalities." Dkt. 9-2 at 26.

Additionally, the ALJ relied on various physical examinations that showed

"largely objectively normal" lower extremity functioning. *Id.* at 27. The ALJ's

opinion was consistent with the medical opinions as to Plaintiff's physical and

mental functioning. *Id.* at 29–31 (discussing several consultative

examinations). *See also id.* at 23 (citing medical records from 2019 to 2021

showing normal attention and concentration, dkts. 9-10 at 34; 9-16 at 44; 9-19

at 8; 9-28 at 9).

The cases Plaintiff cites in his objection are distinguishable. In *Zurawski*

*v. Halter*, the Seventh Circuit remanded an ALJ's determination that an

applicant's testimony was "not entirely credible" due to "inconsistencies" with

objective medical evidence and plaintiff's daily activities. 245 F.3d 881, 887

(7th Cir. 2001). Unlike *Zurawski*, the ALJ here did not leave the Court "to

ponder what exactly. . . these inconsistencies" are but explained how the

medical record conflicted with Plaintiff's subjective statements regarding his

condition. 245 F.3d at 887; dkt. 9-2 at 26–29. In *Shewmake v. Colvin*, the

district court reversed after finding that *all* the reasons an ALJ judge gave for

an adverse credibility determination were deficient. No. 1:12-CV-6339, 2014

WL 2619659, at *8–10 (N.D. Ill. June 12, 2014). And in *Brazitis v. Astrue*, the

Magistrate Judge remanded an ALJ's adverse credibility determination when

the potentially valid reasons for that determination were "less substantial" and "flaw[ed]." No. 1:11-CV-7993, 2013 WL 140893, at *11 (N.D. Ill. Jan. 11, 2013).

The Plaintiff criticizes Magistrate Judge Klump's report as "inconsistent." Dkt. 20 at 3. He argues that if his daily activities are not consistent with sustained concentration for competitive employment as Magistrate Judge Klump writes, then he would not be employable because his concentration would not be sufficient for a full workday. *Id.* But it's clear that Magistrate Judge Klump was well-aware of the prohibition against simply equating a person's ability to participate in activities of daily living to the ability to work a full-time job. Dkt. 19 at 12. It's equally clear that the ALJ considered evidence of Plaintiff's daily activities—and not just watching television, *see* dkt. 20 at 2-3—as *one reason* for discounting his subjective symptom testimony, not in support of the ALJ's RFC determination. Dkt. 9-2 at 25. This is evident from the ALJ's determination of the RFC based principally on the medical record and opinions of medical consultants, not on Plaintiff's daily activities. Dkt. 9-2 at 25–32. This is the same point the Court understands Magistrate Judge Klump to be making when she wrote, "[c]ontrary to [Plaintiff's] argument, the ALJ did not equate [Plaintiff's daily activities] 'to the level of sustained concentration required for competitive employment.'"[3] Dkt. 19 at 15.

---

[3] The Court notes that Plaintiff incorrectly argues that the Magistrate Judge made an error of fact in considering that Plaintiff could drive because there's no support for that in the record. The record reflects that on September 27, 2019, Plaintiff answered, "yes", in response to the question, "do you drive?" Dkt. 9-8 at 34, 40. This supports the ALJ's statement that Plaintiff "was able to drive at least initially," dkt. 9-2 at 22,

Because the ALJ's determination was not "patently wrong" and the ALJ provided some valid reasons for discounting the Plaintiff's subjective testimony, the Magistrate Judge correctly concluded that the ALJ's decision should not be remanded for this reason. *Burmester*, 920 F.3d at 511; *Halsell*, 357 F. App'x at 722.

### 2. CRPS

Plaintiff initially argued that the ALJ failed to consider the impact of Plaintiff's complex regional pain syndrome ("CRPS"), leading to an erroneous RFC analysis. Dkt. 11 at 17–19; Dkt. 13 at 2 –3. Magistrate Judge Klump disagreed, concluding that the ALJ sufficiently addressed Plaintiff's potential CRPS by addressing Plaintiff's pain, considering the medical record, and providing support for her evaluation of subjective symptoms. Dkt. 20 at 16–20. Plaintiff contends that Magistrate Judge Klump made the same error as the ALJ. CRPS, he argues, is not seen on diagnostic testing, so Magistrate Judge Klump should have reversed the ALJ's determination because the ALJ should have evaluated Plaintiff's statements "through the prism of SSR 03-2p." Dkt. 20 at 6.

Social Security Ruling 03-2P "explain[s] the policies of the Social Security Administration for developing and evaluating Title II and XVI claims for

---

which the Magistrate Judge cited as an example to show that the ALJ concluded that Plaintiff's testimony was not wholly supported by his activities of daily living.

9

disability on the basis of . . . complex regional pain syndrome." 2003 WL 22814447 at *1 (S.S.A. Oct. 20, 2003). According to the Ruling, CRPS is characterized by "the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant" together with "swelling, autonomic instability, osteoporosis, or involuntary movements." *Id.* at *4. Ruling 03-2P requires the ALJ to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms." *Id.* at *6; *accord* Social Security Ruling 16-3p. And "[w]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

Here, although the ALJ's decision only references CRPS once,[4] dkt. 9-2 at 27, it nonetheless "sufficiently addressed [Plaintiff's] pain and symptoms, whether those were attributable to CRPS or some other condition." Dkt. 19 at 16. She did not, as Plaintiff contends, discount Plaintiff's subjective complaints just because they appeared to be disproportionate to the objective medical evidence. Dkt. 20 at 6.

---

[4] As noted by Magistrate Judge Klump, the record does not indicate a definitive diagnosis of CRPS. Dkt. 19 at 16 n. 6. Additionally, Plaintiff does not argue that CRPS should have been considered a severe impairment. *Id.* at 16. This distinguishes this case from the cases cited by the Plaintiff—all of which dealt with situations in which plaintiffs had severe impairments based on CRPS. *See Mark L. v. Saul*, No. 3:18-CV-338 JD, 2019 WL 2560099, at *4 (N.D. Ind. June 21, 2019); *Tia D. v. Kijakazi*, No. 122CV00685MJDJPH, 2023 WL 3032942, at *1 (S.D. Ind. Apr. 20, 2023).

The ALJ began her discussion of pain by explaining, consistent with Social Security Rulings 03-2P and 16-3p, that when statements about the "limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities." Dkt. 9-2 at 24. Then, as Magistrate Judge Klump explained, the ALJ discussed the Plaintiff's complaints of pain related to "ribs, back, neck, and extremities" and "referenced that [Plaintiff] 'generally did not leave his home, due in part to his pain.'" Dkt. 19 at 17 (quoting dkt. 9-2 at 24–25). The ALJ also wrote that the Plaintiff indicated that he had a hard time sleeping due to his physical issues and "had difficulties performing just about every physical action." Dkt. 9-2 at 24–25.

But, as explained above, the ALJ did not completely credit Plaintiff's statements regarding the limitations of his pain because his physical functioning remained normal from a period ranging between 2019 to 2021. *Id.* at 26–28. *See also* Dkt. 19 at 18 ("The ALJ assessed subjective complaints of pain along with the objective medical evidence."). Even though his "most significant bodily pain appeared to be related to left lower extremity", he could walk with a normal gait, had full strength, and there was no atrophy to suggest that the left leg was not being used. Dkt. 9-2 at 26–28. Similarly, the ALJ considered Plaintiff's complaints of rib, neck, and back pain,[5] but also

---

[5] It is unclear about whether Plaintiff contends he had CRPS in areas besides his left leg, dkt. 9-2 at 27; dkt. 9-3 at 17, but in any case, the ALJ evaluated his complaints of pain throughout his body in her decision. Dkt. 9-2 at 26–28.

11

evaluated MRIs, CT scans, x-rays, and other evidence that showed normal or relatively minor results.  *Id.  See also* Dkt. 19 at 18–19.  And the ALJ relied on the opinions of medical consultants, which did not "include any limitations in excess of those included in the ALJ's RFC."  Dkt. 19 at 19.

The ALJ's decision complied with Social Security Ruling 03-2P because Plaintiff's statements were not substantiated by objective medical evidence and the ALJ's credibility finding was "based on a consideration of the entire case record."  2003 WL 22814447 at *6.  Therefore, the ALJ "gave adequate consideration to [Plaintiff's] (potential) CRPS and associated pain", dkt. 19 at 20, and "built a logical bridge from the evidence to her conclusion."  *Stephens*, 888 F.3d at 327.

## B. RFC Analysis

Plaintiff initially argued that the ALJ failed to explain the lack of limitation imposed on upper and lower extremity use.  Dkt. 11 at 21.  Magistrate Judge Klump explained that the RFC did in fact impose some limitations on upper and lower extremity use and sufficiently explained the rationale for the ALJ's determination of Plaintiff's RFC regarding extremity use.  Dkt. 19 at 23–25.  Plaintiff has two objections: (1) the RFC determination, which included a restriction on climbing ladders and ropes, failed to take into consideration his upper extremity limitations and (2) Magistrate Judge Klump improperly bolstered the ALJ's ruling.  Dkt. 20 at 6–7.

The ALJ did not ignore Plaintiff's limitation related to his upper extremities.  The decision identified "dysfunction of a major joint" as a severe

12

impairment in this case.  Dkt. 9-2 at 18.  As explained in the Report and Recommendations, the ALJ discussed Plaintiff's upper extremity impairment in the same paragraph that discusses the dysfunction of a major joint.  Dkt. 19 at 22–23 (citing 9-2 at 21).  Therefore, this Court agrees with Magistrate Judge Klump that, in context, the ALJ was referring to Plaintiff's left upper extremity when she discussed the dysfunction of a major joint.  *Id.*

Additionally, the ALJ referenced the upper extremity again when she explained that Plaintiff "sought treatment for bodily pains related to his . . . left upper extremity."  Dkt. 9-2 at 25–26.  As the Magistrate Judge observed, the ALJ acknowledged Plaintiff's complaints about "having numbness and tingling sensations in his hand."  Dkt. 19 at 17 (citing 9-2 at 26).  Plaintiff argues that the ALJ "ignored" this evidence and that the Magistrate Judge dismissed its importance.  Dkt. 20 at 7. But the ALJ confronted that evidence, explaining that "[w]hile the claimant reported having pains in these areas, he was not demonstrated to be substantially limited in objective physical functioning during examinations within the period at issue." Dkt. 9-2 at 26.  The ALJ explained that "some examinations showed tenderness, and reduced range of motion, particularly in the left upper extremity, the claimant normally had full strength."  *Id.* at 26.  Based on Plaintiff's upper extremity limitations, the ALJ recommended light work and included a prohibition on climbing ladders, ropes, and scaffolds as well as crawling. Dkt. 9-2 at 24.

Plaintiff cites "examinations and/or treatments . . . from the eight-day span of July 11 to July 19, 2019," dkt. 19 at 25–26 (citing dkt. 11 at 24 and

13

dkt. 9-2 at 24–25), as evidence that the ALJ should have included more upper

extremity limitations.  But, as Magistrate Judge Klump explained, the record

overall demonstrates that Plaintiff's upper extremity limitations "appear to have

diminished after July 2019."  Dkt. 19 at 25–26 (highlighting medical records

and testimony where upper extremities show improvement or are not

mentioned).  Although Plaintiff argues that this is improper bolstering, Dkt. 20

at 7, Magistrate Judge Klump's point falls squarely within the ALJ's conclusion

that "some examinations showed tenderness, and reduced range of motion,

particularly in the left upper extremity, the claimant normally had full

strength."  Dkt. 9-2 at 26.

In fact, after concluding that the claimant normally had full strength

despite some tenderness and reduced motion, the ALJ cited most of the visits

Plaintiff highlighted[6], demonstrating that the ALJ took the whole record into

account.  *Id.* (citing B5F/64 (dkt. 9-12 at 30), B6F/3 (dkt. 9-13 at 4)); *see* dkt.

11 at 23–24.  And even if the ALJ should have discussed medical records from

July 11 to July 19, 2019, in more detail, a remand would likely not be useful,

because the record demonstrates that jobs were available for RFCs with further

---

[6] There is one visit—July 19, 2019—that the ALJ did not discuss or cite to. See dkt. 9-13 at 19–29, Ex. No. B7F at 9-18. But, "an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (holding that an ALJ's discussion was adequate when the ALJ discussed all impairments in the record, even though claimant argued that the ALJ summarized this information) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011)).  And here, the visit, which does indicate that Plaintiff held his left shoulder higher than his right and showed decreased flexibility, dkt. 9-13 at 24, does not contradict the ALJ's summary of the medical record since she acknowledged that "some examinations showed tenderness, and reduced range of motion, particularly in the left upper extremity." Dkt. 9-2 at 26.

upper extremities limitations.  Dkt. 19 at 28–29 (citing 9-3 at 32–34).  While

the ALJ's decision would have been clearer had her findings been more

"explicit", dkt. 19 at 30, the ALJ nonetheless supported her RFC finding with

evidence when considering the entire record.  Therefore, in this case, remand is

not necessary because "the ALJ will reach the same result." *Stephens*, 888 F.3d

at 327.

**IV.**
**Conclusion**

The Court **OVERRULES** Plaintiff's objections, dkt. [20], and **ADOPTS** the

Report and Recommendation, dkt. [19]. Thus, the Court **AFFIRMS** the ALJ's

decision.  Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/27/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel